All right, the next case we'll hear is United States v. Davis, and Ms. Herzog, we'll hear from you first. This is another 924C case, isn't it? It is, Your Honor. Probably our 934th. Fair enough. Well, hopefully I'll try to keep it interesting. May it please the Court, my name is Allie Herzog, and I represent the appellant, Mr. Davis. As Your Honor just noted, this case is about whether Mr. Davis' 924C conviction for the use of a destructive device in the commission of a crime of violence is supported by a valid predicate crime of violence. In this case, the predicate crime is 844F arson. Under the broad reading of 844F arson that the government employed to convict Mr. Davis, it is not a crime of violence for two reasons. First, it can be committed against the defendant's wholly owned property, and second, it can be committed recklessly. Either reason gives this Court a basis to hold that it is not a crime of violence and vacate Mr. Davis' 924C conviction. Well, we recently got a firm by the Supreme Court in a case called Taylor, and the argument made before the Supreme Court was there were three scenarios. Two involved an attempt for use of violence. The third scenario did not. Does that logic apply to this case if you use the categorical approach if there is a scenario that does not involve violence such as burn your own house down? Wouldn't that solve this problem here? Yes, Your Honor, indeed it does. Under the categorical approach, if there is any way the crime can be committed without meeting the definition of a crime of violence, which of course is the use of physical force against the person or property of another, then the crime of conviction will not meet the definition and is not a crime of violence. But he still could be charged with arson under another statute? Yes, he still could be charged with arson under another statute, although I will note that another panel of this Court in Wilder recently held that the similar 844I arson statute is also not a crime of violence for a similar reason, that it can be committed against the defendant's wholly owned property. Used by, I gather? Yes, Your Honor, the key language here is used by. In other words, he could still own it and it could be used by the government and then it wouldn't violate the arson statute? That's exactly right, Your Honor. And in fact, that is the situation that arose in Mr. Davis' own case. In that case, the qualifying organization that was using the property was a state agency, the Virginia Housing Development Association. And this Court held that that agency was using the property because it was accomplishing its statutory function of aiding low-income families and obtaining a decent place to live by subsidizing the rent of a private tenant who was renting that townhouse from a private property owner. And in that case, the qualifying organization that was using the property was a state agency, but it was, of course, the property of the owner of the property, arguably the tenant of the property, but not of the state agency that was using it. And so Mr. Davis' case gives a pretty clear example of a situation in which the statute applies to situations that fall outside the definition of crime of violence. All right, so that's about it, isn't it? Yes, Your Honor, I would pretty much say so. All right, why don't we hear from the government and see why used by doesn't cause a problem. Good morning, Your Honor. May it please the Court, Aiden Grano-Mikkelsen for the government. I anticipate I have a bit of an uphill argument with you to convince you that used by does fall within the meaning of a crime of violence, but hopefully I can do that. I think the defendant's reading of the statute puts too little emphasis on the practicalities of what it would mean to be possessed by or used by an organization that receives federal financial aid. I struggle to think of a realistic... Used by goes even beyond that. Used by, I mean, they could be used in the living room to interrogate witnesses in the neighborhood about drug dealing. And then all of a sudden he leaves the house, he lets the government use it, and then burns it down because there will be evidence in his own place. I mean, used by is problematic, it seems to me. It's certainly difficult, Your Honor, but I would say even in that scenario, there are federal officers with federal property and federal personnel... He's burning his own property, and he's supposed to be burning the property of another. But the property at that point, if it reaches then the property that's being used by the government, it threatens the property of the government as well. It threatens the personnel of the government, it threatens the property. Five minutes later, he burns it down because they're going to come back with a warrant maybe or something. I don't know, there's just so many types of situations where the government can be using somebody else's property. Your Honor, I disagree that that would fall within the reach of the used by statute because I... Your Honor, what limits it? I think if I were to come to the court and argue that the government was still using the property after it had already departed, this court would correctly chastise me for stretching the statute. What if they went to lunch or going to come back in the afternoon? I mean, you know, I didn't see any limitations on the word used by. Your Honor, my argument for used by comes from Leocal itself, which is that the government has to be actively employing the property, or in this case the organization, and that kind of active employment of a piece of property necessarily means that when someone is committing malicious arson that threatens that property, they are also doing so against the property or the persons of the organization that is actively using the property at that time. Well, the maliciousness could be coming from getting insurance coverage. I mean, that's arson too, isn't it? If you burn down your own property, but not under this, not under 844F, 1994 version. Yes, under the 1994 version, which is different than the modern version of 844F, it does include the additional used by language. My argument would still be, well, the organization or the government is actively using a piece of property. The malicious arson, which necessarily requires the mental state that you know it's going to be substantially likely to threaten the piece of property while it's being actively employed by an organization or by the government at that point. Does the government actually have a lease? It is not required to have a lease under the 844 version of the statute, or the 1994 version of the statute, Your Honor. But I don't think property of another within the meaning of 924C is limited exclusively to ownership or leaseholds. There's no indication from the statutory text or from the legislative history that Congress intended to impose that kind of technical property rights analysis. The statute would require the burning of a property of another with the idea of depriving the other of a property interest. Doesn't it use the property of another? It's the person or property of another, yes, Your Honor. The person's not here. The property of another suggests that it's depriving the other of a property interest. And one way to argue, I suppose, is that, I don't know about the used by. Used by gives you a property interest. I think, Your Honor, if Congress had intended property of another to be ownership interest or leasehold interest, it could have said that. I mean, it used the words owned by or leased by in 844 itself. And if it wanted to use that in 924C, it could. But it used a much broader phrase of property of another, which I think encompasses a broader set of relationships. In the Fourth Amendment context, for example, we recognize that individuals have privacy interests in merely possessing an item, even if they have no ownership title to it. And so when we think of people's relationships to property, I think that spans broader than technical property ownership or even leasehold interest. So I would argue that under 924C, Congress did not cabinet meaning exclusively to technical property ownership under state law, for example. Isn't the real purpose of this 924C that the government's seeking to impose a greater penalty than he would have received under the other statute? Yes, Your Honor, it is a separate offense. So the 924C charges are in addition to the underlying predicate offenses. And Congress was very clear that when things like firearms or explosive devices are used in this context, the harm to society and the potential harm to individuals is significantly higher. So when Congress enacted an entirely separate statute to capture this conduct, I think it's fair to assume that in situations like this one, where an individual uses an explosive device at property that's being used by an organizational entity, that the risk to individuals, the risk to that property, is substantially higher. And I have not seen a single case in the 844F context in which a person committed 844F arson against property that was solely owned by themselves with no organization or institutional entity having any relationship to that property. I think it's just beyond what was charged under that statute, under the earlier 1944 version. The use here is the Virginia Housing Authority has used the property by providing financial assistance to the tenant. And you say that is actively employing some activity on the property? And it defeats, I guess, the ownership of it? This court said that it was actively using the property in the 90s when it addressed Mr. Davis' case. What statutory interpretation are you using to read that into the statute is what I want to know. So I think, Your Honor, by giving subsidized affordable housing vouchers and additional payments, the state agency, this court concluded, was using federal funds, accomplishing its purpose, and using the property to provide affordable housing to individuals who qualified under Section 8. Does that mean every bank is using property when the bank is financing a mortgage? Your Honor, I think technically if we're going by a property theory, a bank does own a property interest in a home when they have a mortgage on it. They own a superior lien. You put on an FHA assistant loan on it, you're saying you don't really own your house for this purpose here. I would not say that the bank is using the property in the same way that they, the VD... So you're saying if you're providing financial assistance, or if you just, as Judge Niemeyer alluded to, a mortgage, but you certainly have government-assisted type mortgages. Or guarantees. Guarantees on it. So how does that work in this? You see what the problem is with this, I mean, in terms of where we go with it, we kind of plan around this issue here, but sometimes you have to go directly and deal with something because we can create some serious problems. I understand the Court's concern, Your Honor. I do think that this Court, in Mr. Davis' case, was very specific that it wasn't just the fact that there were federal funds involved, but that it was an ongoing program where the Virginia State Agency was continually providing vouchers to this person. It was actively employing this property to accomplish its statutory purposes and to use those federal funds. So I don't think it extends as broad as the Court might be concerned. I'm certainly not here to argue that this is an easy case. It's certainly a difficult one. But I do think that where this Court drew the line at active employment does provide some context that in the real world, when an individual commits malicious arson against property that's being actively employed by or used by an organization, they have necessarily threatened the property or the personnel of that organization during that active employment. Okay. I think we understand. Thank you, Your Honor. Any rebuttal? Yes, Your Honor. I'll be brief. I just wanted to point the Court to a due process decision that I think sheds some light on an easy place to draw this line. In Richardson v. Town of Eastover, which is 922 F. 2nd 1152, this Court explained that at a very minimum, a revocable at will license to use a property creates no property interest whatsoever in the holder. So even if there were some difficult questions, as opposing counsel alludes to, regarding leases or mortgages, those difficult questions are simply not raised in this case, because this case requires mere use of a property, which does not convert the property into the property of the user. Unless the Court has any further questions? Okay. Well, thank you. I notice you're court appointed, and I'd like to recognize that service, of course. It's very important and appreciate it, and thank you for providing that to us. Thank you, Your Honor. We'll normally come down and greet counsel, but we're still observing the COVID protocols, and so we'll forego that, but the next time you come, I hope we can assure you that we'll shake hands with you after argument. Will you please adjourn court?
judges: Paul V. Niemeyer, James Andrew Wynn, Henry F. Floyd